the other incorporators no formality has been required other than the mere signature of the instrument. It seems clear, therefore, that the condition of the statute has not been complied with; that no proper instrument has been filed as required by the statute to constitute re-- spondent a corporation.

It is objected, however, on the part of the respondent that this question is not properly before us, and that, if the incorporation is imperfect, the right to question the same lies only with the state through its attorney general. Whatever might be our views were the question res nova, we are foreclosed from its consideration by decisions which we deem to be of authority. In Re Kings, Q. & S. R. Co., 6 App. Div., at page 241, 39 N. Y. Supp. 1004, an application for a similar certificate had been made to the railroad commissioners, who denied the same, stating as one of the grounds therefor that the railroad company had no legal existence as a corporation. An appeal was taken to the Second department, which sustained the position of the railroad. commissioners. Upon that appeal the appellant insisted that the board of railroad commissioners had nothing whatever to do with that question, as it was not within their province to determine. The court, however, overruled their objection, and held that the question was properly before the railroad commissioners, and must first be determined by them. The opinion, in part, reads:

"The requirement of the law is that the petitioner must have regularly complied with the statute at the time it makes application to the board for the certificate of public convenience and necessity. The petition in this proceeding so stated. The board is only authorized to act where there has been compliance with the law, and the whole proceeding, until final authority is given to construct a railroad, is tenative only. The corporation does not acquire its full franchises until the final certificate is given, and until that time arrives it is not only within the province of the board, but it is its duty, to make inquiry into all prior proceedings, in order to determine that the thing which applies for the certificate of public convenience and necessity is of a character which the law recognizes, and to which it contemplated that a certificate should be given. Such inquiry upon the part of the board in the present case led them to the conclusion—and the only one permissible upon the evidence—that the petitioner, which called itself a corporation, was not such in fact and law. In fact, it was nothing which the statute recognized, and in consequence the board had no authority to grant it a certificate."

This case was followed in Re Riverhead, Q. & S. R. Co., 36 App. Div. 514, 55 N. Y. Supp. 938.

These considerations lead to a reversal of the determination here under review. Determination of the railroad commissioners reversed, with costs. All concur.

---

(75 App. Div. 131.)

PEOPLE ex rel. RETSOF MIN. CO. v. PRIEST et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. TAXATION—FRANCHISE.

Under Tax Law, § 2, subd. 3, as amended by Laws 1899, c. 712, defining as property which may be taxed "a franchise, right, authority or permission" to lay pipes or mains in or under a public street, some special privilege derived from some governmental body is meant; and the

permission granted by individuals owning the fee in a street to lay pipes thereunder does not constitute a franchise, right, or permission which is subject to taxation.

Smith, J., dissenting.

Appeal from special term.

Action by the people, on relation of the Retsof Mining Company, against George Priest and others, composing the state board of tax commissioners. From an order refusing to set aside a special assessment, the relator appeals. Reversed.

The relator is owner of a line of pipes in the town of Livonia, which was placed upon or under the surface of the soil with the consent and grant of the owners of the fee thereof, and this pipe line is now within the bounds of a highway. The question is one of law, and was presented to the court below and is presented here upon the following stipulated facts: "Concede that there has been no express grant, legislative or municipal, of any right to run a pipe line. The fee of the highway through which the pipe line runs is in the adjoining owners, and the public has only the public easements of a highway, and the pipe line was laid in the street by the consent and grant of the adjacent owners." The board of tax commissioners assessed this as a special franchise, at a valuation of $2,500. The relator contends that it was not assessable as a special franchise, as defined by subdivision 3, § 2, of the tax law, as amended by chapter 712, Laws 1899.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Putney, Twombly & Putney (Henry B. Twombly, of counsel), for relator.

John C. Davies, Atty. Gen. (Lewis M. Martin, Dep. Atty. Gen., of counsel), for respondents.

KELLOGG, J. The tax law referred to declares that "a franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.'" Subdivision 3, § 2, as amended by chapter 712, Laws 1899. It is this species of property which the board of tax commissioners has the right to assess, and in making its assessment it must include the value of tangible property in any highway, etc., connected with the "special franchise." It is plain that, if the franchise does not exist, the right to assess does not exist. The "franchise" here does not mean the right to exercise corporate functions, but the right to use the public streets, highways, or public places, either as an individual or corporation. The right to so use the public streets, highways, or public places is a property right, and it is because such property has value that the right exists to assess it. The "franchise, right, authority or permission" here mentioned must mean some special privilege derived from some governmental body or some political body having authority to grant the property rights sought to be taxed. It is this species of property, intangible in its nature, which the law was enacted to reach. All tangible property, real and personal, was assessed before the passage of this law. The tangible property which is added to the intangible by the law was presumably assessed before, and there was no apparent difficulty in reaching its value under the general provisions governing local taxation. The purpose of the law, I think, is obvious.

Its purpose was to reach and assess those rights in streets, highways, and public places which once belonged to the public at large or to political divisions of the state, and which had been granted for a term or in perpetuity to individuals or corporate bodies; and, if this is the obvious purpose of the law, it follows that, where nothing has been granted, there is nothing for the board of tax commissioners to assess. In the case before us it is conceded that the relator has no grant from the state or other public body. It has only a grant from the owners of the soil. All its property rights consist in that grant, and in no other. It has no other right, authority, or permission. This property right, and the pipe line therewith connected, are assessable locally. It has no intangible property, such as this law makes assessable as a "special franchise." It does not clearly appear that the relator has interfered with the highway rights of the public. If it has done so, it is a trespasser, and has acquired no assessable franchise or property right by its unauthorized invasion. It has no protective grant from the public, and hence no property rights to be considered by the tax commissioners. The fact ·is here conceded that the relator has no express permission from any municipality.. This precludes the in-ference that it has the permission of any one authorized to grant any rights belonging to any body politic, and also any inference that the highway commissioner has given any permission; for he is an officer of the municipality, and authorized to grant only a municipal right. A tacit acquiescence on the part of a municipal officer in the obstruction of a public highway does not create a property right, and can never ripen into a right. Such an unauthorized invasion is not a subject for valuation and assessment. It is not property. The invasion is unlawful. The official duty is not to assess it as a property right, but to put an end to the unauthorized invasion, and this duty is man-datory.

It is unnecessary to discuss the subject as to the rights of the own-er of the fee of the highway, and to what extent he may enjoy the use and profits of the land within the bounds of the highway so long as he does nothing to obstruct or interfere with any of the rights of the public; for all .those reserved rights of the owner of the fee are locally assessable, and do not fall under the jurisdiction of the tax commis-sioners. All such reserved rights as the owner may have conveyed by grant are also locally assessable, and none of them can come under the jurisdiction of the tax commissioners, except through some pro-tective grant touching their use, emanating from governmental au-thority. This leads to the conclusion that the relator has no special franchise, and is not assessable otherwise than locally.

The order of the special term denying the motion to set aside and vacate the assessment of the relator herein should be reversed, with $10 costs and disbursements to appellant, and the motion granted, with $10 costs. All concur, except SMITH, J., who dissents.